651 A.2d 409

**David R. INGOGLIA**

v.

**STATE of Maryland.**

**No. 537, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Jan. 3, 1995.

660

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before MOYLAN, ALPERT and HARRELL, JJ.

ALPERT, Judge.

Appellant, David R. Ingoglia, was convicted by a jury in the Circuit Court for Baltimore City of assault. Upon the imposition of a ten year prison sentence, he filed this appeal. Appellant presents three questions in this appeal. He asks:

I. "Did the trial court err in refusing to ask if any of the prospective jurors would give more weight to the testimony of a witness merely because of the witness' race?"

II. "Did the trial court err in overruling defense counsel's objection to, and refusing to strike, testimony by Detective Sydnor that traffic investigators on the scene 'determined it was not an accident.'?"

III. "Did the trial court [err] in considering the victim's mother's opinion that a sentence of at least ten years imprisonment should be imposed?"

We answer the first two questions in the affirmative and reverse the judgment of the trial court. We answer appellant's third question in the negative but address it nonetheless for guidance purposes.

The incident that led to appellant's conviction occurred in the early morning hours of September 9, 1992. Appellant was driving his car north on Greenmount Avenue. The victim was a pedestrian. Although some details were disputed at trial, there was no dispute that appellant ran over the victim with his car and seriously injured him. The State presented evidence that appellant ran over the victim deliberately. The defense countered that it was an accident.

# I

## Jury Selection

Appellant first takes issue with the jury selection process. Defense counsel had requested that the court ask the following during *voir dire* examination: "Is there any member of the jury panel who would give more weight to a white witness' testimony because he or she is white rather than black or black rather than white." The court failed to ask the proposed question and, after *voir dire* was conducted, defense counsel objected. The court responded: "I asked that question: Is there any prejudice, prejudice against anything or something that might prejudice your opinion...." In fact, the court had asked the prospective jurors: "Does any member of this jury panel harbor any type of prejudice of any nature whatsoever that would prevent you from giving this case a fair trial, would you stand, please?" Appellant now contends that the court's refusal to ask a specific question about possible racial prejudice constitutes reversible error.

As the Court of Appeals recently summarized,

the scope of *voir dire* and the form of the questions propounded rests firmly within the discretion of the trial judge.... The trial judge's discretion regarding the scope of a proposed avenue of *voir dire* is governed by one primary principle: the purpose of "the inquiry is to ascertain 'the existence of cause for disqualification and for no other purpose.' ... Where parties to the litigation direct their inquiries concerning a specific cause for disqualification, they have 'a *right* to have questions propounded to prospective jurors' during *voir dire*...."

*Davis v. State,* 333 Md. 27, 34, 633 A.2d 867 (1993) (emphasis in original) (citations omitted). Only "'[q]uestions not directed to a specific ground for disqualification but which are speculative, inquisitorial, catechising or 'fishing,' asked in the aid of deciding on peremptory challenges, may be refused in the discretion of the court, even though it would not have been error to have asked them.' " *Id.* at 34–35, 633 A.2d 867 (citation omitted).

Racial prejudice may constitute cause for disqualification of a prospective juror. Thus, "[i]n Maryland, it is well-settled that interrogation of the venirepersons with respect to possible racial prejudice is required, on request, when racial prejudice may be a factor...." *Bowie v. State,* 324 Md. 1, 13, 595 A.2d 448 (1991). Racial prejudice " 'may be a factor because of the facts of the case when the complainant and the witnesses for the State are of a different race than the defendant, and the crime involves victimization of another person and the use of violence.' " *Id.* at 15, 595 A.2d 448 (quoting *Holmes v. State,* 65 Md.App. 428, 438–39, 501 A.2d 76 (1985), *rev'd on other grounds,* 310 Md. 260, 528 A.2d 1279 (1987)).

As appellant points out in his brief, he

"is white. The man who was struck by [appellant's] car, Edgar Johnson, is black, as are all of the eyewitnesses called by the State.... The crime, as alleged by the State, involved victimization of another person by the use of violence."

Appellant correctly concludes that the facts of the case suggest that racial prejudice may be a factor, and that the requested inquiry into racial prejudice was therefore required. While the trial court did ask a general question as to whether the prospective jurors harbored "any type of prejudice of any nature whatsoever" that would have prevented them from deciding the case fairly, the jurors were not yet aware of the facts of the case or the races of the persons involved. The court's question did not sufficiently focus the attention of the jurors on possible racial prejudice.

Although it might be argued that the question presented by defense counsel was not a model of clarity, the nature of the question was clear.

[W]hen the lower court is made aware of the essence of what the defendant is seeking, it should either ask, on its own motion, 'a proper question designed to ascertain the existence of cause for disqualification on account of racial

bias or prejudice,' ... or give the defendant an opportunity to submit additional, proper *voir dire* questions.

*Bowie,* 324 Md. at 13, 595 A.2d 448 (citation omitted).

■ We are not at all persuaded by the State's contention that defense counsel waived any challenge to the court's failure to question the prospective jurors about racial prejudice by accepting the jury that was ultimately selected. Under the circumstances presented here, we are convinced that defense counsel's acceptance of the jury "was merely obedient to the court's ruling and obviously [was] not a withdrawal of the prior objection, timely made." *Miles v. State,* 88 Md.App. 360, 377, 594 A.2d 1208, *cert. denied,* 325 Md. 94, 599 A.2d 447 (1991) (where defense counsel's acceptance of the jury did not constitute a withdrawal of his prior objection to the court's refusal to ask certain *voir dire* questions). *Cf. Couser v. State,* 282 Md. 125, 130, 383 A.2d 389, *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978) (where defense counsel's acceptance of the jury did not waive his objection to the court's refusal to permit him to examine the prosecutor's jury dossier); *Holmes,* 65 Md.App. at 439–40, 501 A.2d 76 (defense counsel's failure to object when the court did not question prospective jurors about racial prejudice, combined with his acceptance of the jury as selected, waived any argument that the court erred by failing to inquire about such prejudice).

## II

### Nonresponsive Testimony

Detective Marvin Sydnor of the Baltimore City Police Department's Homicide Unit testified on behalf of the State. Detective Sydnor explained that he was one of the first police officers to arrive on the scene and that he investigated the case as a possible attempted murder. During the detective's direct examination, the following transpired:

Q. You said the crime lab was there?

A. Crime law was there, units from the traffic investigation unit were there.

Q. Why was the traffic investigation unit there?

A. Initially they thought this was an accident. When they got there they determined that it was not an accident but a deliberate use of—

MR. SOLOMON [defense counsel]: Objection, motion to strike.

THE COURT: Sustained. Please the jury will disregard what they determined.

BY MR. HISIM [prosecutor]: Upon making their determination, what if any investigation did they do?

A. They did not do any.

Q. Where did they go?

A. They left the scene.

Thereafter, on cross-examination, the subject of the traffic investigation section was revisited:

Q. Detective, you're not an accident reconstructionist, are you?

A. That's correct.

Q. And I think you testified that you brought out the accident reconstructionist in this case, however briefly and then told them they can sort of go home, is that your testimony or am I mistaken?

A. You're mistaken.

Q. What is T I S?

A. Traffic Investigation Section.

Q. Okay. Traffic Investigation Section was out and you told them they could go home?

A. That's not correct either.

Q. *Tell me what you told them.*

A. *They were on the scene when I got there. From their preliminary investigation, they determined it was not an accident.*

MR. SOLOMON: Objection, motion to strike. It is not responsive to my question, your Honor.

THE COURT: Well, I have told you a dozen times stop telling why. But I can't get you to stop doing that. Overruled.

THE WITNESS: They told me that based on their—

MR. SOLOMON: Objection.

THE COURT: Well do you have another question for him along those lines?

MR. SOLOMON: Your Honor the question was formulated very succinctly and very clearly. I only asked him whether he asked T I S to go home.

THE COURT: Mr. Solomon, I don't want to get into all of that, now, please let's just try to keep it what we got.

(Emphasis added.)

Appellant contends that the trial court erred by overruling his objection to Detective Sydnor's testimony about the conclusions of the Traffic Investigation Section, and by refusing to strike the testimony. Appellant maintains that the testimony was not responsive to defense counsel's inquiry, and that the trial court's ruling placed inadmissible hearsay before the jury.

■ "[A] judge may strike that part of a witness' answer which was nonresponsive to the question asked the witness. . . . [Q]uestioning counsel . . . has the right to object on the ground solely that an answer is nonresponsive." 6 Lynn McLain, *Maryland Evidence*, § 611.2 at 131 (1987) (footnote omitted). In overruling defense counsel's objection and refusing to strike the testimony, the trial court seemingly recognized that the testimony was improper. The court refused to act, however, because it apparently did not agree that the testimony was nonresponsive. In fact, a review of the transcript makes clear that testimony *was* nonresponsive. Defense counsel asked Detective Sydnor what he told the Traffic Investigation Section officers. Detective Sydnor responded by reporting what the officers told him.

The case hinged on whether the trier of fact believed, as the State contended, that appellant deliberately ran over the

victim or, as the defense contended, that the incident was an accident. As appellant observes, "[t]he court's ruling resulted in the admission of extremely damaging hearsay testimony bearing on the critical issue in the case." Under the circumstances, it cannot be said that "there is no reasonable possibility that the evidence complained of ... may have contributed to the rendition of the guilty verdict." *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976) (footnote omitted).

## III

### Sentencing Consideration

At the sentencing hearing, the prosecutor recommended that appellant be sentenced to ten years imprisonment. The prosecutor then called the victim's mother, Mary Alice Johnson, to the stand and questioned her as to the extent of the victim's injuries. Further questioning proceeded as follows:

MR. HISIM: ... [A]fter considering what happened to your son and after considering the defendant and what happened to him and what he claims happened, what do you think is the appropriate sentence that Judge Johnson should impose today on this defenda[n]t?

[MRS. JOHNSON]: I really don't think probation is his answer.

MR. SOLOMON: Objection.

MRS. JOHNSON: I don't think—

MR. SOLOMON: Your Honor, I'm making an objection with all due respect at this time.

THE COURT: Overruled.

MR. HISIM: So you don't think probation is appropriate? What type of sentence do you think would be the appropriate sentence considering all the factors that you believe?

MRS. JOHNSON: All the factors that I believe, he need to be punished so that he will think about what he has done, not only if it had been my child, if it had been somebody else's child.

You cannot when you get angry—when I become angry, I cannot get up and punch on you and to get a point across because in this society, we are supposed to be adults that are intelligent and intelligent people don't put fists or cars to people and I feel a whole lot of sympathy towards his parents because I am a parent. I have been a parent all of Edgar's life. I am going to be a parent regardless of what happens to him. I am still going to be his parent but something needs to be done.

MR. HISIM: If Judge Johnson wants to impose a period of incarceration, what do you think would be an appropriate period of time?

MR. SOLOMON: Objection.

THE COURT: Overruled.

MRS. JOHNSON: I think anything from ten years on.

MR. HISIM: Is there anything else you would like to tell his Honor as to what you think should happen as to [appellant] in this case?

MRS. JOHNSON: I think he needs to get counseling while he is away. . . .

After Mrs. Johnson testified, defense counsel argued that her testimony should "be stricken from the court's mind." The court responded:

Well, it's my understanding that the law permits victims and their relatives and families to make statements at the sentencing proceedings and—proceedings—and she went through that and so she was allowed to do that.

The court has a responsibility of determining an appropriate sentence and that responsibility will be exercised independently regardless of what anybody thinks including her, the State, you or the defendant, but I have to listen to all of it and put it all in a pot and come out with something that's just and I'm going to do that.

So I'm not going to strike her comments from the record.

The court then heard argument from defense counsel to the effect that appellant should spend no more than two years in

prison and should then receive probation and counseling. The court also heard from appellant and appellant's parents. Ultimately, a prison sentence of ten years was imposed.

■ Appellant now contends that the trial court erred by considering the recommendation of the victim's mother. Appellant recognizes that, pursuant to Md.Ann.Code art. 27, § 643D(a) (1992),

[i]n every case resulting in serious physical injury or death, the victim or a member of the victim's immediate family ... may, at the request of the State's Attorney and in the discretion of the sentencing judge, address the sentencing judge or jury under oath or affirmation before the imposition of sentence.

He posits that § 643D(a) should be read *in pari materia* with Md.Ann.Code art. 41, § 4–609 (1993), which provides for the preparation and use of victim impact statements as part of the presentence investigations in certain cases. Section 4–609(c)(3) directs:

A victim impact statement shall:

(i) Identify the victim of the offense;

(ii) Itemize any economic loss suffered by the victim as a result of the offense;

(iii) Identify any physical injury suffered by the victim as a result of the offense along with its seriousness and permanence;

(iv) Describe any change in the victim's personal welfare or familial relationships as a result of the offense;

(v) Identify any request for psychological services initiated by the victim or the victim's family as a result of the offense; and

(vi) Contain any other information related to the impact of the offense upon the victim or the victim's family that the court requires.

Appellant points out that § 4–609(c)(3) makes no mention of a sentencing recommendation by the victim or the victim's fami-

ly. From this, he concludes that such a recommendation "is not a proper sentencing consideration."

Even assuming *arguendo* that appellant is correct in asserting that § 643D of Article 27 and § 4–609 of Article 41 are to be read *in pari materia*, there is a fatal flaw in appellant's argument. In short, in enacting § 4–609, the Legislature did not purport "to limit the victim's role to the single Victim Impact Statement of the presentence investigation." *Reid v. State*, 302 Md. 811, 819, 490 A.2d 1289 (1985). "[I]n this State, a sentencing judge is vested with virtually boundless discretion." *Logan v. State*, 289 Md. 460, 480, 425 A.2d 632 (1981). There is "a paucity of restraints being placed on a judge possessing the responsibility to impose punishment, lest he be 'forced to bridle himself with mental blinders and thus enter the process of imposing sentence with impaired vision.'" *Id.* at 482, 425 A.2d 632 (citation omitted).

In *Reid*, the defendant contended that the trial court erred by considering a supplemental victim impact statement that contained, *inter alia*, the victim's recommendation as to the defendant's sentence.[1] In rejecting the argument, the Court of Appeals observed that the trial court expressly stated that it was "in no sense in any way bound" by the recommendation. 302 Md. at 822, 425 A.2d 632. The Court further observed that, in imposing sentence, the trial court did not so much as refer to the recommendation. *Id.* In the instant case, the trial court told defense counsel that it would exercise its discretion in imposing sentence "independently regardless of what anybody thinks including [Mrs. Johnson], the State, you or the defendant." Appellant presents us with no reason to doubt the trial court's word. As in *Reid*, the court did not mention Mrs. Johnson's recommendation when it imposed sentence.

---

1. In the context of discussing whether the supplemental victim impact statement was even prejudicial to the defendant, the *Reid* Court referred to the victim's sentencing recommendation as "the only questionable comments made by the victim in the supplemental statement." 302 Md. at 821, 425 A.2d 632.

We find instructive the words of the Court of Appeals of Wisconsin. In *Wisconsin v. Johnson*, 158 Wis.2d 458, 463 N.W.2d 352 (App.1990), the appellant in a sexual assault case contended that the trial court abused its discretion by considering the sentencing recommendations of the two victims. In upholding the sentence, the appellate court remarked:

... [T]rial courts are not rubber stamps. They do not blindly accept or adopt sentencing recommendations from any particular source. They accept recommendations only if they can independently conclude that the recommended sentence is appropriate in light of the acknowledged goals of sentencing as applied to the facts of the case.

... [T]he fact that victims may not be objective in the matter is of little import. If bias or personal interest were a ground for rejecting sentencing arguments and recommendations, few defendants (or members of their families) or defense attorneys would be competent to comment.

We believe that consideration of the comments—even the 'wishes'—of a victim is within the sentencing court's prerogatives. Courts are entitled—even encouraged—to consider the rights and interests of the public in imposing a sentence in a particular case.

*Id.* 463 N.W.2d at 355–56.

JUDGMENT REVERSED; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.