701 A.2d 862

**Sean D. FOWLKES**

v.

**STATE of Maryland.**

**No. 1302, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Oct. 30, 1997.

574

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Asst. Atty. General (J. Joseph Curran, Jr., Atty. General and Patricia Jessamy, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before WENNER and EYLER, JJ., and ROBERT F. FISCHER, Judge (retired), Specially Assigned.

EYLER, Judge.

Appellant, Sean Fowlkes, was convicted by a jury in the Circuit Court for Baltimore City of assault and carrying a handgun. He was sentenced to consecutive terms of twenty and three years, respectively. On appeal, appellant presents us with the following questions:

I. Did the trial court abuse its discretion in refusing to *voir dire* the jury panel on sympathy for the paraplegic, teenaged, innocent female victim of gun violence?

II. Did the trial court err in admitting extensive, unduly prejudicial evidence concerning the victim's physical disabilities and suffering, after the injury?

We will answer appellant's first question in the negative, not reach the second question, and affirm the judgments of the circuit court.

## FACTS

At about 10 p.m., on 30 March 1994, Marquites "Christian" Williams, 13, her cousin, Dasha Hinton, 14, and their two friends, Shanta Harrison and Tameka Winder, had just left a store and were walking along Chester Street in Baltimore City. As they approached the intersection of Chester and Lafayette Streets, they saw a man get out of a car and begin arguing with some young men who were standing on the corner. Christian and Dasha recognized one of the men on the corner as appellant, who is known in the neighborhood as "Swo." During the argument, someone began shooting, and a gun battle ensued. Christian was struck by a stray bullet.

In investigating the incident, the police recovered seven spent bullet casings in the area of the gun battle. Five of the casings were determined to have been fired by the same .32 caliber automatic, and two of the casings were determined to have been fired from a .380 caliber automatic. Broken automobile glass was found in the area where witnesses described seeing the man get out of the car.

The witnesses to the shooting all agreed that Christian was an innocent victim of a bullet meant for someone involved in the argument; however, some witnesses reported seeing different people shooting. Christian testified that as she watched the man who had been in the car walk away from appellant, appellant "started shooting," and that the other men on the corner were not shooting. Dasha Hinton, one of the three girls walking with Christian, testified that she saw appellant step out into the street and start shooting at the man who had been in the car. Dasha estimated that appellant shot two or three times. Shanta Harrison, who was fourteen at the time of trial, testified she was sure the man who had been in the car fired shots, but did not see whether any of the men on the corner engaged in the shooting. Tameka Winder, who was seventeen at the time of the shooting, testified that

after the man who had been in the car told the men on the corner he was going to kill them all if they were there when he got back, the shooting began. During direct examination, Tameka testified that both the man who had been in the car and the men on the corner, including appellant, started shooting. On cross-examination, she said she was not positive she saw appellant shoot. On re-direct examination, Tameka confirmed that prior to trial she had identified appellant as a shooter.

The defense called Harry Morgan, a resident of the area where the shooting occurred, who testified that upon hearing gun shots he looked up and saw a man standing outside a car shooting a gun, the same man identified by other witnesses as having exited from the car. Although he knows appellant from the neighborhood and he saw the group of young men standing on the corner, Harry Morgan said he did not see appellant in that group. Appellant testified on his own behalf and stated that he was walking towards the corner when he saw the man described by other witnesses as having exited from a car engaged in a fist fight with Rollo, an acquaintance. The man fighting with Rollo then threatened to "kill everyone on the corner" and started shooting. Appellant testified he never fired a shot, nor did he have a gun with him. No one known as "Rollo" testified at trial.

Christian was shot in the back as she ran to escape the gun violence. She was initially treated at University Hospital, where she remained for three months. Later she was transferred to Mount Washington Pediatric Hospital, where she remained for five months before returning to live with her grandmother. No one else was wounded in the gun fight.

In August 1994, appellant was arrested in connection with this shooting. His first trial ended in a mistrial due to a severe snow storm. Appellant was later convicted by a jury of assault and of wearing a handgun, but found not guilty of the remaining charges. After appellant was sentenced to a term of twenty years for assault, and to a consecutive term of three years for the handgun violation, he noted this appeal.

## I.

Appellant first contends the trial court abused its discretion in failing to inquire of the *voir dire* panel as to its ability to render a fair verdict without being influenced by sympathy for Christian, an innocent victim of gun violence. The State maintains that this issue was not properly preserved for our review.

### Preservation of the Issue

█ According to the State, *Gilchrist v. State*, 340 Md. 606, 667 A.2d 876 (1995), is dispositive because defense counsel said the panel chosen was satisfactory, without again noting his objection. We disagree. In *Gilchrist*, defense counsel systematically used his preemptory challenges to eliminate white persons from the jury. This was challenged by the State. After conducting an inquiry, the trial judge excused the entire panel and brought in a new venire panel from which a new jury was selected. On appeal, the Court of Appeals held that defense counsel did not waive his exclusion of prospective jurors on the first panel by responding when asked that he approved of the second panel, and that *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was not apposite. *Id.* at 618, 667 A.2d 876.[1]

In *Gilchrist,*the Court of Appeals said that "a defendant's claim of error in the inclusion or exclusion of a prospective juror or jurors 'is ordinarily abandoned when the defendant or his counsel indicates satisfaction with the jury at the conclusion of the jury selection process.'" 340 Md. at 617, 667 A.2d 876 (quoting *Mills v. State*, 310 Md. 33, 40, 527 A.2d 3 (1987), *vacated on other grounds*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988)). "Nevertheless, where the objection was not directly 'aimed at the composition of the jury ultimately

---

1. The Court went on to say that "the *Batson* principle is not limited to the exclusion from juries of historically oppressed minorities.... Thus, under both Article 24 of the Maryland Declaration of Rights and the Equal Protection Clause of the Fourteenth Amendment, peremptory challenges may not be exercised on the basis of race." *Gilchrist*, 340 Md. at 624–25, 667 A.2d 876.

selected,' we have taken the position that the objecting party's 'approval of the jury as ultimately selected ... did not explicitly or implicitly waive his previously asserted ... [objection, and his] objection was preserved for appellate review.'" *Id.* at 618, 667 A.2d 876 (quoting *Couser v. State,* 282 Md. 125, 130, 383 A.2d 389, *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978)).

Here, defense counsel objected to the trial court's failure to ask a particular question during *voir dire,* not to the ultimate composition of the jury. Therefore, defense counsel did not waive the objection by approving the panel selected. *Gilchrist,* 340 Md. at 617, 667 A.2d 876.

In *Ingoglia v. State,* 102 Md.App. 659, 651 A.2d 409 (1995), appellant requested that a particular question be posed to the venire panel during *voir dire.* The request was denied, and at the conclusion of the *voir dire,* defense counsel approved the panel selected. Just as in the case at hand, the State argued that, by approving the panel selected, appellant waived the objection to the trial judge's failure to pose the requested question. According to *Ingoglia,* under these circumstances, "we are convinced that defense counsel's acceptance of the jury 'was merely obedient to the court's ruling and obviously [was] not a withdrawal of the prior objection, timely made.'" *Id.* at 664, 651 A.2d 409 (quoting *Miles v. State,* 88 Md.App. 360, 377, 594 A.2d 1208, *cert. denied,* 325 Md. 94, 599 A.2d 447 (1991)). In *Couser v. State, supra,* 282 Md. 125, 383 A.2d 389 (1978), defense counsel sought a list prepared by the State concerning the venire panel. The trial judge declined to permit defense counsel to see the list, considering it to be work product. After the jury was selected, defense counsel said he was satisfied with the panel chosen. On appeal, the State claimed that appellant had not preserved this issue. The Court of Appeals did not agree because the objection was not directly aimed at the composition of the jury and, therefore, a statement of satisfaction with the panel selected did not waive collateral issues. *Id.* at 129–30, 383 A.2d 389.

Hence, just as in *Ingoglia, Miles,* and *Couser,* appellant did not fail to preserve this issue for our review.

## Merits of the Issue Regarding the Proposed *Voir Dire* Question

█ Prior to being rendered paraplegic by a stray bullet, the victim was a normal thirteen-year-old female. The trial judge was aware that the victim was to testify for the State, and that it would be necessary for her to testify either from a wheelchair or from a stretcher. Nonetheless, the prospective jurors were not informed of the extent of the victim's injuries until the prosecutor's opening statement. The venire panel was given only the name of the defendant involved, that the defendant was charged with attempted murder and related offenses, the date and location of the incident, the name of the victim, and that there had been a newspaper article concerning the case. The victim was not present in the court room and the prospective jurors were afforded no further information concerning the incident or the injuries suffered by the victim.

The trial judge posed the following question to the prospective jurors:

Is there any member who for any religious reason or any other reason whatsoever cannot judge a person— cannot reach a fair verdict, cannot decide a case, religious, prejudice, or any other reason whatsoever, this [sic] you could not sit as a member of this jury and reach a verdict, render a fair and impartial trial based solely upon the evidence this [sic] you hear in this courtroom and nothing else?

This was followed by the following statement and question: "[Y]ou must consider and decide this case fairly and impartially. You are to perform this duty without bias or prejudice as to any party. You should not be swayed by sympathy, prejudice or public opinion. That's the law. Is there any prospective juror who cannot obey the law?" There was no affirmative response.

As we said earlier, defense counsel asked the presiding judge to inquire of the venire panel if it would be able to deliver a fair verdict, without being swayed by sympathy for the victim, a teenager who was rendered paraplegic and permanently confined to a wheelchair because of gun violence.[2] As to this request, the following ensued:

> STATE: In other words what Counsel is asking is if you have sympathy. Everybody in this room has sympathy for a paraplegic and they have to decide based on what they hear in the courtroom.

* * * *

> THE COURT: I've never asked that question before and I've had quadriplegics in in [sic] beds before the jury and my fear is it gives fair notice to the jury to say now, they may have sympathy for them, but telling them they ought to have sympathy for this, and that's a legitimate thing to do so far as deciding this case is concerned?

> DEFENSE: No, I don't believe it's legitimate, sir, at all. Sympathy—

* * * *

> THE COURT: There is an instruction that you can't decide this case based upon fear and sympathy. I don't want to highlight this and I think [your request] would be too much of a highlight. There is an instruction in civil as well as criminal instructions saying you must decide this case without fear, without sympathy.

* * * *

I'll tell the jury instruction number 204, impartiality in considerations.... You are to perform this duty without

---

2. We note that the question proposed by defense counsel was far from clear and was not included in the defense counsel's initial proposed *voir dire*. Since it was, however, made clear by the prosecutor, it has been preserved for our review. Moreover, the trial judge obviously understood the proposed question and denied it.

bias or prejudice as to any party. You should not be swayed by sympathy, prejudice or public opinion and that's the law.

\* \* \* \*

So, I don't wish to give it because I don't think it's required and I think it would do more harm than good and I so find.

 It is the State's position that the question was not required, and the trial judge, in denying defense counsel's request, acted within the permissible scope of his discretion. We agree with the State with respect to the narrow issue presented, but as explained below, trial judges should generally provide a brief summary of the nature of the case to the panel before asking specific *voir dire* questions. Under certain circumstances, this may include a reference to the nature of any injury sustained.

 In *Boyd v. State*, 341 Md. 431, 671 A.2d 33 (1996), Judge Karwacki, writing for the Court of Appeals, reviewed the evolution and requirements of the voir dire process in Maryland. The purpose of voir dire is to ascertain the existence of cause for disqualification. *Id.* at 435, 671 A.2d 33. The scope of voir dire and the form of the questions propounded generally rest within the discretion of the trial judge. *Id.* at 436, 671 A.2d 33. The "limited arena of *mandatory* questioning" extends only to those areas of inquiry "reasonably likely to reveal cause for disqualification." *Id.* at 436, 671 A.2d 33. The two areas of inquiry that may uncover cause for disqualification are (1) whether prospective jurors meet minimum statutory qualifications for jury service and (2) "the state of mind of the juror in respect to the matter in hand or any collateral matter *reasonably liable* to unduly influence him." *Id.* The proper focus of voir dire examination has been described as being limited to "the venireperson's state of mind and the existence of bias, prejudice, or preconception, *i.e.*, a mental state that gives rise to cause for disqualification. . . ." *Hill v. State*, 339 Md. 275, 280, 661 A.2d 1164 (1995).

■ The Court of Appeals has identified "several areas of inquiry where, if reasonably related to the case at hand, a trial judge must question prospective jurors." *Davis,* 333 Md. at 36, 633 A.2d 867. These include racial bias, religious bias, unwillingness to convict in a death penalty case founded upon circumstantial evidence, and a tendency to afford more weight to the testimony of a police officer solely because of his or her official status. *Id.* (Citations omitted.) Maryland appellate courts have yet to address a situation such as that in the case before us, *i.e.,* a fact specific question tied to *sympathy,* as opposed to *bias* or *prejudice.*

Applying the above legal principles, we conclude (1) that the requested voir dire question was discretionary and not mandatory and (2) that the trial court did not abuse its discretion. With respect to the latter, there is nothing in the case before us to support a holding that the trial court abused its discretion, other than the existence of a serious injury to a young person, which, in our opinion, is insufficient.

■ The purpose of voir dire is to ferret out bias or prejudice conceived prior to entry into the courtroom that would prevent a juror from fairly and impartially deciding the case based on the evidence presented in the courtroom. The appellate courts of this State have rightfully presumed that a person with racial, ethnic, or gender bias cannot render such a fair and impartial verdict but, in our view, sympathy falls into a different category. The question, with respect to a specific bias, is whether the bias exists. If determined to exist, a trial judge may excuse a prospective juror even if the person purports to be able to render a fair verdict. In contrast, we expect normal people to experience sympathy, and the question in that instance is whether the person will be unduly swayed by sympathy. In other words, a jury is expected to decide a case *without* bias or prejudice; it is not expected to do so without sympathy but is expected to follow the court's instruction that it not be unduly *swayed* by it. In most cases, it would be difficult for a prospective juror to know the degree to which feelings of sympathy would be aroused until the

evidence is presented. In every case, there are factors that may evoke feelings of sympathy. To require trial judges to ask questions relating to all such facts would expand *voir dire* beyond that traditionally required in this State.

In criminal and civil cases generally, trial judges are routinely called upon to exercise discretion in deciding whether to admit evidence that has some probative value but which also has a propensity to arouse natural feelings of sympathy. We rely on trial courts to exercise sound discretion in performing the balancing test and thereby ensure a fair and impartial trial to the litigants.

In this case, the specific concern of defense counsel was unclear. The concern may have been that a prospective juror unduly swayed by sympathy would be more likely to believe a seriously injured person or it may have been that such a prospective juror would be more likely to hold anyone—specifically, the defendant—responsible for the injury. In the absence of an identifiable concern tied to a specific fact, a different conclusion on the issue presented would make it difficult in future cases to draw a line between mandatory questioning and permissible, but not required, questioning.

For example, a contrary holding, at the very least, would imply that the nature of all serious injuries in all attempted murder cases, and the nature of the injuries causing death and the impact upon the decedent's survivors in all murder cases, would have to be disclosed to all prospective jury members as part of an inquiry as to sympathy. A contrary holding could easily be read to imply that any sad or tragic fact would have to be the subject of such an examination in all cases.

In sum, absent a cause for concern that a prospective juror may not be able to put aside sympathy because of specific facts—as distinguished from general human experience—a general inquiry of the panel, plus a correct instruction of the law with respect to the role of sympathy ordinarily is sufficient.

Although concluding that the failure to ask the specific question before us was not reversible error, we believe a

sound practice, and one that should generally be followed by trial judges, is to provide prospective jurors, at or near the beginning of the *voir dire* process, with a brief summary of relevant particulars of the case before it. Frequently, the identity of the parties, the nature of the dispute or charge, and a reference to time and location will be sufficient. In many cases, it will be advisable to include additional particulars. The case before us was described by the trial court as follows:

The case we have now before this Court is called State of Maryland versus Sean Derrick Fowlkes. Mr. Fowlkes is charged with attempted murder and certain related offenses relating to handgun, etcetera. The alleged crime occurred on the 30th day of March, 1994, in the 1800 block of North Chester Street here in the City of Baltimore. The alleged victim was one Marquites Williams ... and a newspaper article appeared concerning this case on May the 22nd, 1995.

In our view, the better practice would have been for the trial judge to inform the venire panel of the nature and extent of the disability sustained by the victim. Thereafter, a general inquiry concerning sympathy, bias, and prejudice would have been more likely to ferret out a prospective juror who might have been unduly influenced by sympathy for the victim. Whether the failure to omit a particular recitation is an abuse of discretion, and thus reversible error, however, must be determined on a case by case basis.

## II.

Appellant also contends the trial judge erred in admitting extensive, unduly prejudicial evidence concerning the victim's physical disabilities and suffering after the injury. The State was permitted extensively to question the victim as to the disabilities she suffered from the incident. Moreover, the trial court also permitted the introduction of extensive medical records, which appellant contends were not relevant to his guilt, were highly prejudicial, and were introduced merely to encourage sympathy for the victim.

## The Victim's Testimony

After the victim testified that she has been unable to stand or walk since the incident, the State continued to question the victim about her physical infirmities. Although appellant claims the trial court erred in admitting such testimony, the State contends that the issue has not been preserved for our review.

During the colloquy between State's counsel and the witness, defense counsel sporadically objected, but failed to object to each question eliciting testimony describing the victim's physical infirmities. In addition, defense counsel consistently failed to object until the question had been answered. Such a delay is inappropriate, because the information being sought was clear from the question.

Maryland Rule 4–323(a) requires that

[a]n objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived. The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs. The court shall rule upon the objection promptly.

In *Bruce v. State,* 328 Md. 594, 627–30, 616 A.2d 392 (1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2936, 124 L.Ed.2d 686 (1993), the Court of Appeals reemphasized Rule 4–323(a), and explained: "[I]f opposing counsel's question is formed improperly or calls for an inadmissible answer, counsel must object immediately. Counsel cannot wait to see whether the answer is favorable before deciding whether to object." *Id.* at 628, 616 A.2d 392 (citations omitted). The question is "whether or not [defense] counsel could or should have known from the question that the answer would be objectionable." *Id.* at 629, 616 A.2d 392; *see also Byrd v. State,* 98 Md.App. 627, 631, 634 A.2d 988 (1993) (defense counsel's objection was not properly preserved because it was not made until after the answer was given and under the facts "counsel knew the basis for the objection as soon as the question was asked").

■ "Cases are legion in the Court of Appeals to the effect that an objection must be made to each and every question, and that an objection prior to the time the questions are asked is insufficient to preserve the matter for appellate review." *Sutton v. State*, 25 Md.App. 309, 316, 334 A.2d 126 (1975). In the case at hand, defense counsel objected sporadically. "[F]or appellant's 'objections to be timely made and thus preserved for our review, defense counsel would have had to object each time a question concerning [the objectionable issue] was posed or to request a continuing objection to the entire line of questioning. As he did neither, his objection is waived, and the issue is not preserved for our review.'" *Snyder v. State*, 104 Md.App. 533, 557, 657 A.2d 342, *cert. denied*, 340 Md. 216, 665 A.2d 1058 (1995) (quoting *Brown v. State*, 90 Md.App. 220, 225, 600 A.2d 1126, *cert. denied*, 326 Md. 661, 607 A.2d 6 (1992)). Additionally, extensive medical records relating to the victim's treatment were admitted without objection.

■ Despite our failure to reach the issue in this case, we observe, as we did earlier in this opinion, that trial judges must exercise sound discretion in ruling on the admissibility of evidence to ensure a fair trial, including the rejection of evidence when its tendency to evoke sympathy weighed against its probative value is unfairly prejudicial.

## Medical Records

After the incident the victim was initially transported to University Hospital, where she remained for three months. Her medical records from University Hospital were admitted without objection. Upon being transferred to Mount Washington Pediatric Hospital, the victim remained there for five months. Her medical records from Mount Washington, consisting of 500 detailed pages, over objection, were admitted into evidence.

■ The State believes the victim's medical records from Mount Washington Pediatric Hospital were necessary for the jury to understand why the victim had not identified appellant

as the shooter until five months after the incident. During cross-examination, defense counsel extensively questioned the victim as to these circumstances. Thus, we do not believe the trial court erred in admitting the medical records from Mount Washington Pediatric Hospital.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

WENNER, J., dissents.

WENNER, Judge, dissenting.

After being sentenced to a term of twenty years for the assault conviction, and to a consecutive term of three years for the handgun conviction, appellant noted this appeal. As I believe the trial court's refusal to pose the voir dire question requested by appellant constituted an abuse of discretion, I respectfully dissent.

Defense counsel asked the trial court to inquire of the venire panel whether it could deliver at fair and impartial verdict, despite its sympathy for the victim.[1] Following this request, the following colloquy ensued:

> STATE: In other words what Counsel is asking is if you have sympathy. Everybody in this room has sympathy for a paraplegic and they have to decide based on what they hear in the courtroom.

* * * *

> THE COURT: I've never asked that question before and I've had quadriplegics in in [sic] beds before the jury and my fear is it gives fair notice to the jury to say now, they may have sympathy for them, but telling them they ought

---

1. While I note that the question proposed by defense counsel was neither clear nor included in the defense counsel's proposed *voir dire*, it was made abundantly clear by the prosecutor. Consequently, it has been preserved for our review. Moreover, it is clear that the trial judge understood the proposed question.

to have sympathy for this, and that's a legitimate thing to do so far as deciding this case is concerned?

DEFENSE: No, I'd don't believe it's legitimate, sir, at all. Sympathy—

\* \* \* \*

THE COURT: There is an instruction that you can't decide this case based upon fear and sympathy. I don't want to highlight this and I think [your request] would be too much of a highlight. There is an instruction in civil as well as criminal instructions saying you must decide this case without fear, without sympathy.

\* \* \* \*

I'll tell the jury instruction number 204, impartiality in considerations.... You are to perform this duty without bias or prejudice as to any party. You should not be swayed by sympathy, prejudice or public opinion and that's the law.

\* \* \* \*

So, I don't wish to give it because I don't think it's required and I think it would do more harm than good and I so find.

The State believes no such question was required and that the trial court did not abuse its discretion in rejecting it. I do not agree. Inasmuch as the prospective jurors were unaware of the victim's age and her injuries, or the cause of those injuries, I believe such a question would have identified potential jurors whose sympathy was cause for disqualification.[2] *Davis*, 333 Md. at 47, 633 A.2d 867. Consequently, I believe

---

2. In fact, the panel ultimately selected was not made aware of the victim's age or injuries until the State's opening statement.

the trial court abused its discretion *in* refusing to pose such a question.

The Court of Appeals clearly enunciated in *Perry v. State,* 344 Md. 204, 217–21, 686 A.2d 274 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1318, 137 L.Ed.2d 480 (1997), and *Davis v. State,* 333 Md. 27, 633 A.2d 867 (1993), the purpose and scope of *voir dire.* In *Davis,* appellant claimed the trial court abused its discretion in refusing to ask "whether any of the jurors were, or were associated with, law enforcement personnel." *Id.* at 33, 633 A.2d 867. In *Perry,* the trial court asked whether any of the jurors, their families, or close friends "had a prior experience as a juror, witness, victim or defendant in any criminal homicide or aggravated assault proceeding?" *Perry,* 344 Md. at 218, 686 A.2d 274. Appellant believed the trial court erred in refusing to expand the question to include any criminal proceedings or any crime of violence. In both *Davis* and *Perry,* the Court of Appeals said the trial court did not abuse its discretion because such questions were not required.

> Nonetheless, the *Davis* Court went on to say:
> [W]here the parties identify an area of potential bias and properly request *voir dire* questions designed to ascertain jurors whose bias could interfere with their ability to fairly and impartially decide the issues, then the trial judge has an obligation to ask those questions of the venire panel. *Merely asking general questions, such as, "is there any reason why you could not render a fair and impartial verdict," is not an adequate substitute for properly framed questions designed to highlight specific areas where potential jurors may have biases that could hinder their ability to fairly and impartially decide the case.* Those *voir dire* questions, however, should be framed so as to identify potential jurors with biases which are cause for disqualification, rather than merely identifying potential jurors with attitudes or associations which might facilitate the exercise of peremptory challenges.

*Id.* at 47, 633 A.2d 867.[3]

A trial court's process of determining whether a proposed inquiry is *reasonably* likely to reveal disqualifying partiality or bias includes weighing the expenditure of time and resources in the pursuit of the reason for the response to a proposed *voir dire* question against the likelihood that pursuing the reason for the response will reveal bias or partiality.

*Perry,* 344 Md. at 220, 686 A.2d 274.

The Court of Appeals also identified "several areas of inquiry where, if reasonably related to the case at hand, a trial judge must question prospective jurors," *Davis,* 333 Md. at 36, 633 A.2d 867, including racial bias, religious bias, unwillingness to convict in a death penalty case founded upon circumstantial evidence, and a tendency to afford more weight to the testimony of a police officer solely because of his or her official status. *Id.* Maryland appellate courts, however, have yet to address a situation such as that here before us.

In the case at hand, prior to being rendered paraplegic by a stray bullet, the victim was a normal, healthy thirteen-year-old female. Moreover, the trial court was fully aware of her age and the cause and extent of her injuries, that she was to testify for the State, and that it would be necessary for her to testify from either a wheelchair or a stretcher. As we have noted, however, the jurors did not learn of her age and the cause and extent of her injuries until the State's opening statement.

Although I agree the entire venire panel would sympathize with the victim, I believe that when, as here, "the parties identify an area of potential bias and properly request *voir*

---

**3.** In *Ingoglia,* 102 Md.App. 659, 663, 651 A.2d 409 (1995), we said, when racial prejudice may be a factor, "the requested inquiry into racial prejudice was therefore required." Furthermore, the "general question as to whether the prospective jurors harbored 'any type of prejudice of any nature whatsoever' that would have prevented them from deciding the case fairly .... did not sufficiently focus the attention of the jurors on possible racial prejudice."

*dire* questions designed to ascertain jurors whose bias could interfere with their ability to fairly and impartially decide the issues...." *Davis*, 333 Md. at 47, 633 A.2d 867, such a question, if requested, should be asked. The trial court, however, believed such a question would inappropriately highlight the victim's injuries. I believe such a question would have identified prospective jurors whose sympathy for the victim would hinder their ability fairly and impartially to decide the case. Although the trial court believed its general question and jury instructions were sufficient, again, I do not agree.

The trial court initially posed the following voir dire question:

> Is there any member who for any religious reason or any other reason whatsoever cannot judge a person—cannot reach a fair verdict, cannot decide a case, religious, prejudice, or any other reason whatsoever, this [sic] you could not sit as a member of this jury and reach a verdict, render a fair and impartial trial based solely upon the evidence this [sic] you hear in this courtroom and nothing else?

The trial court then said: "[Y]ou must consider and decide this case fairly and impartially. You are to perform this duty without bias or prejudice as to any, party. You should not be swayed by sympathy prejudice or public opinion. That's the law. Is there any prospective juror who cannot obey the law?"

I do not believe this was sufficient. As I have said, while I recognize that the entire venire panel would sympathize with the victim, some might have been so sympathetic that it would have interfered with their ability to render a fair and impartial verdict based only upon the evidence presented. As we have earlier noted, the trial court gave the venire panel only the defendant's name, the offenses with which he was charged, the date and location of the incident, the victim's name, and that there had been a newspaper article about the incident. The victim was not in the courtroom, and the prospective jurors were given no further information about the incident.[4]

---

4. The trial court described the case as follows:

The issue here before us is similar to that in *Ingoglia v. State*, 102 Md.App. 659, 651 A.2d 409 (1995), in which we concluded that because racial prejudice may constitute a cause for disqualification, the trial court erred in refusing to pose a question focusing the prospective jurors' attention on possible racial prejudice. *Id.* at 663, 651 A.2d 409. There we reversed the judgment of the circuit court. Although the trial court posed a "general question as to whether the prospective jurors harbored 'any type of prejudice of any nature whatsoever' ..., the jurors were not yet aware of the facts of the case or the races of the persons involved." *Id.*

When, as here, prospective jurors might be overwhelmed with sympathy upon learning of the age, cause, and the injuries suffered by the victim, I believe a question such as that requested by appellant should have been posed to the venire panel. "Merely asking general questions, such as, is there any reason why you could not render a fair and impartial verdict,' is not an adequate substitute for properly framed questions designed to highlight specific areas where potential jurors might have biases that could hinder their ability to fairly and impartially decide the case." *Davis*, 333 Md. at 47, 633 A.2d 867.

In sum, I believe the trial court abused its discretion in refusing to ask the question requested by appellant. Thus, I would reverse the judgment of the circuit court.

---

The case we have now before this court is called State of Maryland versus Sean Derrick Fowlkes. Mr. Fowlkes is charged with attempted murder and certain related offenses relating to handgun, etcetera. The alleged crime occurred on the 30th day of March, 1994, in the 1800 block of North Chester Street here in the City of Baltimore. The alleged victim was one Marquites Williams ... and a newspaper article appeared concerning this case on May the 22nd, 1995.