13 A.3d 68

Adrian McFADDEN AND Anthony MILES

v.

STATE of Maryland.

No. 0275 Sept. Term 2009.

Court of Special Appeals of Maryland.

Feb. 3, 2011.

240

Michael R. Braudes & Thomas Donnelly (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for appellant.

Cathleen C. Brockmeyer (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: WRIGHT, GRAEFF, ARRIE W. DAVIS, (Retired, Specially Assigned), JJ.

WRIGHT, J.

This appeal arises out of the shooting death of George Johnson, and the wounding of Avon Ball and Macy Wilson, on July 6, 2007. After a jury trial in the Circuit Court for Baltimore City, the jointly-tried appellants, Adrian McFadden and Anthony Miles, were convicted of the following offenses and sentenced to the terms specified:

*McFadden*

1) first degree murder of Johnson: life without parole

2) four counts of use of a handgun: 80 years total, consecutive

3) two counts of conspiracy to assault in the first degree: 10 years, consecutive, plus another 10 years, concurrent

4) armed carjacking: 30 years, consecutive

5) two counts of first degree assault: 50 years total, consecutive

6) second degree assault: merged

7) attempted first degree murder of Ball: life, consecutive

*Miles*

1) two counts of conspiracy to assault in the first degree: 10 years, plus another 10 years, concurrent

2) first degree assault: 25 years, consecutive

3) attempted armed carjacking: 30 years, consecutive

4) second degree assault: merged

This appeal followed.

## Questions Presented [1]

1. If preserved, where the voir dire included an objectionable "CSI" question and appellants nonetheless accepted the jury as empaneled, have appellants waived their objection to the question?

2. If preserved, did the trial court properly exercise its discretion when it overruled the Appellants' objections to the prosecutor's opening statement and rebuttal closing argument?

3. To the extent that this issue is properly before this Court, did the trial court properly exercise its discretion when it determined that Appellant Miles's cross-examination of Avon Ball was not relevant?

4. Are appellants entitled to a merger of their separate sentences for two counts of conspiracy to assault?

5. If preserved, was the evidence sufficient to sustain Appellants' convictions for attempted armed carjacking, conspiracy and first degree assault?

6. Did the trial court properly exclude from evidence Avon Ball's prior conviction for assault?

7. Did the trial court properly exercise its discretion when it permitted Avon Ball to testify that he understood Appellants' actions to mean that they intended to take his vehicle?

8. If properly before this Court, did the trial court properly allow into evidence the out-of-court statements of Avon Ball, Shantia Benson, Trezline Burris, and Appellant McFadden?

---

**1.** We have adopted and renumbered the questions presented by the State. As the State explained in its brief:

Appellants McFadden and Miles filed separate briefs in this case. In their respective briefs, they have raised only one common issue, which Appellee addresses as Question Presented No. [2]. Questions Presented Nos. [1] & 3 are raised by Appellant McFadden in his brief, and incorporated by reference by Appellant Miles. Questions Presented Nos. 4, 5, 6, 7, 8, 9, and 10 are raised by Appellant Miles in his brief, and incorporated by reference by Appellant McFadden.

9. If not waived, did the trial court properly decline to instruct the jury on self-defense and properly limit defense counsel's argument on mutual affray to the charges of assault?

10. Was the trial court's conduct of the trial not plainly erroneous?

We conclude that appellants preserved the first two issues for our review. We answer both in the negative and, thus, reverse the judgments of the circuit court and remand the cases for a new trial.[2] In light of our reversal based on the first two issues, we decline to address issues three through ten.

### Facts

During the trial, Avon Ball testified that, on the evening of July 6, 2007, he was riding as a passenger in a car with his foster brother, George Johnson, and Ball's seven-month-old son. Ball stated that he had just dropped off his six-year-old daughter at Preston and Cary Streets in Baltimore City, and he was on his way to another foster brother's house at 803 North Payson Street, to pick up Johnson's tennis shoes. As they arrived at the 800 block of North Payson Street, Johnson drove past their destination, then backed into an alley to turn around, so that they could approach 803 North Payson from the same side of the street.

Once they turned out of the alley, Ball heard "some commotion," and Johnson stopped the car. Specifically, Ball stated that he heard appellant Miles "swearing down towards us saying [ ] you almost hit my son." Ball, however, did not "see a child in the area at that point." According to Ball, Miles was accompanied by a male and a female.

Ball testified that he exchanged words with Miles for approximately "a minute, minute and a half" before Johnson pulled out of the alley and "parked the car diagonally into 803 [North Payson]." Ball remained in the vehicle with his son,

---

**2.** We also hereby deny the State's motion to dismiss.

while Johnson "got out of the car, . . . and knock[ed] on the door to get his tennis shoes." While Johnson waited at the front door, Ball observed a group of about five males—including appellants Miles and McFadden—walking in the middle of the street, approaching 803 North Payson. Ball told Johnson "to pay attention because . . . the dude . . . was coming towards us" but Johnson "just kept knocking on the door."

Thereafter, three males "jumped" Johnson, and Ball exited the vehicle "to help him out." Before he could reach Johnson, however, Ball stopped because he saw appellant McFadden pointing a black, six-shot revolver at him. Meanwhile, Miles was standing in the street, yelling: "This is my life, which one of you almost hit my son?"

Ball then asked McFadden: "What's the gun for?" At that time, Johnson came over to Ball's side, and the two of them started "backing up in the middle of the street going towards Lafayette Street" with their hands "up in the air." Ball informed McFadden that he needed to get to the vehicle because "[his] son's in that car." Appellants, however, stated that Ball was not getting to that car and "that's our car."

Eventually, appellants "started to calm down a little bit," turned around, and began "walking towards where the car was at." Ball and Johnson walked about 15–20 feet behind them in an attempt to go "back towards the vehicle too." As they were walking, another heated exchange of words occurred between Johnson, Miles, and other individuals present. Appellants then turned back around towards Ball and Johnson. According to Ball, Miles "took off his shirt and . . . start[ed] coming toward us" while McFadden "started shooting."

Ball began running and heard about six shots fired. He was struck by two bullets before he rounded the corner at North Payson and Lafayette Streets. One bullet went through his abdomen and another grazed his side. When Ball went back to check on Johnson, who was "lying in the middle of the street," he saw McFadden "wiping off the gun" and

asking whether Johnson was dead. One girl, 17–year–old Macy Wilson, was also struck by a bullet in her left thigh.

Approximately five minutes after Ball was shot, "the ambulance and stretcher came and got [him]." When he reached the hospital, Ball learned that Johnson had died. Ball suffered a collapsed lung, had his spleen taken out, and his diaphragm reconstructed. He was in the hospital for eight or nine days. Ball testified that there was no doubt in his mind that McFadden was the person who fired the gun.

On July 11, 2007, Ball selected McFadden, from a six-pack photographic array, as the person who "pointed the gun . . . [,] killed my brother [Johnson] and also shot me and other people that night." That same day, Ball identified Miles, from a photographic array, as the person who "started the argument . . . and . . . swung at me and my brother at different times during the incident." In addition, Ball stated that Miles is "the reason why my brother George Johnson and I was shot and my brother killed."

When the defense presented their case, several witnesses testified that the shots were fired from a darkened playground area some distance away, and not from the area of the fight. According to some of those witnesses, the shooter was another individual named Steffan Hawkins.[3]

Additional facts will be provided as necessary, in the relevant sections, below.

## Discussion

### I. CSI Instruction

■ Appellants argue that "the trial court erred by using specific non-neutral language in its voir dire question regarding 'CSI-type' evidence." Specifically, appellants aver that the question "suggested to the jury that [a guilty finding] was the only option regardless of whether scientific evidence was presented in the case." Meanwhile, the State counters by

---

3. Hawkins's first name was spelled a number of different ways throughout the record.

arguing that appellants did not preserve this issue for our review, and in the alternative, that they have waived any appellate complaint "because they accepted the jury as empaneled."

 "Voir dire is critical to the protection of a criminal defendant's right to a fair and impartial jury, as guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights." *State v. Logan*, 394 Md. 378, 395–96, 906 A.2d 374 (2006) (citations omitted). In Maryland, voir dire aids in ensuring "a fair and impartial jury by determining the existence of cause for disqualification." *Logan, supra*, 394 Md. at 396, 906 A.2d 374 (citation omitted). "The process entails examination of prospective jurors through questions propounded by the judge (or either of the parties, if allowed by the judge) to determine the existence of bias or prejudice and, literally translated, means 'to say the truth.'" *Charles & Drake v. State*, 414 Md. 726, 733, 997 A.2d 154 (2010) (citation omitted). "[O]ur tenets of voir dire favor inquiries tailored to the likely issues to be presented in the case, so juror biases directly related to the crime, the witnesses, or the defendant, may be uncovered." *Id.* at 734, 997 A.2d 154.

> The manner of voir dire is governed by Rule 4–312(d), which states: (1) *Examination.* The trial judge may permit the parties to conduct an examination of qualified jurors or may conduct the examination after considering questions proposed by the parties. If the judge conducts the examination, the judge may permit the parties to supplement the examination by further inquiry or may submit to the jurors additional questions proposed by the parties. The jurors' responses to any examination shall be under oath. On request of any party, the judge shall direct the clerk to call the roll of the array and to request each qualified juror to stand and be identified when called.
>
> (2) *Challenges for cause.* A party may challenge an individual qualified juror for cause. A challenge for cause shall be

made and determined before the jury is sworn, or thereafter for good cause shown.

■■■■ "The right to a fair trial guaranteed by the Sixth Amendment of the United States Constitution and Article 21 of Maryland's Declaration of [R]ights requires that judges refrain from making comments which potentially may improperly influence the jury or a specific juror or jurors." *Butler v. State*, 392 Md. 169, 192, 896 A.2d 359 (2006). Thus, "[a] judge's role during a jury trial makes his or her statements subject to a high level of scrutiny, when they may result in an unfair advantage to either party." *Id.* at 181, 896 A.2d 359. It has been held "inappropriate to question the jury [during voir dire] as to whether or not they would be disposed to follow or apply stated rules of law because they are covered in subsequent instructions to the jury." *Marquardt v. State*, 164 Md.App. 95, 142, 882 A.2d 900 (2005) (citing *Twining v. State*, 234 Md. 97, 100, 198 A.2d 291 (1964)) (internal quotation marks omitted). "A question designed to commit potential jurors to positions on a specific set of facts which will arise in the course of a trial is also improper." *Stewart v. State*, 399 Md. 146, 163, 923 A.2d 44 (2007) (citation omitted).

At a bench conference during voir dire on October 21, 2008, the trial court in this case informed both defense attorneys that it would be asking the "CSI instruction" and noted that they could "take exception," which they did. Prior to asking the voir dire question, the court addressed defense counsel and stated: "Now, counsel, I've made a note of your views at the bench with regard to the question I'm about to ask for the record." The court then stated:

I'm going to assume, based on having done this before, that many of you watch way too much television, including the so-called realistic crime shows, like CSI, Miami, and CSI, New York, and CSI, Glen Burnie, Law and Order, and Illegal and Unwarranted and the rest of them.

Now, I trust you understand that these crime shows are fiction and fantasy. And for dramatic effect and for you to stay tuned in, they purport to rely upon "scientific evi-

dence." This is certainly entertainment, but you must not allow that entertainment to interfere with the high duty you will have in this case as a juror.

Therefore, if you are currently of the opinion or belief that you cannot convict a Defendant without "scientific evidence," regardless of the other evidence in the case and regardless of the instruction I give you as to law, please rise. I see no responses. Okay.

After a jury was not selected on that day, the venire panel was excused.

When a new venire panel was assembled on October 23, 2008, the court again asked the "CSI" question and received no responses. Thereafter, the court asked counsel to approach the bench and the following ensued:

THE COURT: ... any further exceptions which were already stated?

[McFadden's counsel]: No.

THE COURT: All right.

[Miles's counsel]: Your Honor, I did have an exception to the CSI question.

THE COURT: I understand.

The State first contends that this issue is not preserved for our review because, on October 23, 2008, defense counsel objected to the CSI question *after* the voir dire question had been posed. We have previously held, however, that in order to preserve an objection, counsel need only "mak[e] known to the trial court what he wanted done." *Baker v. State,* 157 Md.App. 600, 610, 853 A.2d 796 (2004) (issue was preserved where "appellant told the trial court that he objected to its failure to ask his requested voir dire questions") (citations and footnote omitted). Our decision was based on Maryland Rule 4–323(c), which provides, in pertinent part:

[I]t is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not

be stated unless these rules expressly provide otherwise or the court so directs. If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection.

In this case, counsel for both appellants noted their objection to the CSI question on October 21, 2008. When a new venire panel was assembled on October 23, 2008, the court immediately conducted voir dire and again asked the CSI question, and defense counsel was not required to object until after the question was posed. Because Miles's counsel noted his exception at the ensuing bench conference and made known to the court what he wanted done, this issue was properly preserved.

■ Next, the State argues that this issue is "nonetheless waived" because "[a]ppellants accepted the jury as empaneled without qualification." Quoting *Gilchrist v. State*, 340 Md. 606, 667 A.2d 876 (1995), the State notes that "a defendant's claim of error in the inclusion or exclusion of a prospective juror or jurors is ordinarily abandoned when the defendant or his counsel indicates satisfaction with the jury at the conclusion of the jury selection process." *Id.* at 617–18, 667 A.2d 876 (citations omitted). The State's reliance on *Gilchrist*, however, is misplaced, as appellants' claim of error does not lie upon the inclusion or exclusion of a prospective juror. Rather, appellants challenge the court's propriety in posing the CSI question.

■ In *Fowlkes v. State*, 117 Md.App. 573, 701 A.2d 862 (1997), we stated:

[W]here the objection was not directly aimed at the composition of the jury ultimately selected, we have taken the position that the objecting party's approval of the jury as ultimately selected . . . did not explicitly or implicitly waive his previously asserted . . . [objection, and his] objection was preserved for appellate review.

*Id.* at 579–80, 701 A.2d 862 (citation omitted). In other words, when defense counsel objects to the trial court's "failure to ask

a particular question during voir dire, not to the ultimate composition of the jury," he or she does not "waive the objection by approving the panel selected." *Id.* at 580, 701 A.2d 862 (citing *Gilchrist,* supra, 340 Md. at 617, 667 A.2d 876). This is consistent with our decision in *Marquardt,* where we made clear that "accepting the jury that is ultimately selected after the circuit court has refused to propound requested voir dire questions does not constitute acquiescence to the previous adverse ruling." *Marquardt, supra,* 164 Md. App. at 143, 882 A.2d 900 (citations omitted).

We note that the decisions in *Fowlkes* and *Marquardt* dealt with objections to the court's refusal to give the requested instruction, whereas this case presents an objection to a question actually given. We treat these circumstances identically because in both, "defense counsel's acceptance of the jury was merely obedient to the court's ruling and obviously was not a withdrawal of the prior objection, timely made." *Fowlkes, supra,* 117 Md.App. at 580, 701 A.2d 862 (citation, alterations, and internal quotation marks omitted).

██ Having concluded that appellants have preserved this issue for our review, we turn to determine whether the trial court erred in including the CSI question during voir dire. The State concedes that, if the issue is properly before this Court, then appellants are, "under *Charles and Drake,* entitled to a new trial."

██ In *Charles & Drake,* the Court of Appeals rejected a voir dire question that was similar to the question at issue here. There, the trial court asked:

I'm going to assume that many of you, from having done a few of these, watch way too much TV, including the so-called realistic crime shows like CSI and Law and Order. I trust that you understand that these crime shows are fiction and fantasy and are done for dramatic effect and for this dramatic effect they purport to rely upon, "scientific evidence," to convict guilty persons. While this is certainly acceptable as entertainment you must not allow this entertainment experience to interfere with your duties as a juror.

Therefore, if you are currently of the opinion or belief that you cannot convict a defendant without "scientific evidence," regardless of the other evidence in the case and regardless of the instructions that I will give you as to the law, please rise. . . .

*Charles & Drake, supra,* 414 Md. at 730, 997 A.2d 154 (emphasis and footnote omitted). On appeal, the Court of Appeals concluded that "the judge abused his discretion by suggesting to the panel that 'convict[ing]' Drake and Charles was the only option." *Id.* at 739, 997 A.2d 154. According to the. Court, "this suggestive question poisoned the venire, thereby depriving Drake and Charles of a fair and impartial jury." *Id.* Because the voir dire question in *Charles & Drake* is nearly identical to the CSI question in this case, we likewise conclude that appellants were deprived of a fair and impartial jury.[4]

## II. The State's Improper Comments

 Next, appellants argue that the trial court erred when it allowed the State to make several "improper" comments during its opening statement and closing argument. Preliminarily, the State counters by arguing that neither appellant objected to two of those comments and, therefore, "those appellate issues are not properly before this Court." In addition, the State contends that appellant Miles failed to object to three additional comments and, thus, failed to preserve those claims for our review. The State adds that, even if preserved, the trial court properly exercised its discretion

---

4. McFadden failed to object to the CSI question during voir dire on October 23, 2008 and Miles failed to object to some of the improper statements made by the State in its opening and closing arguments. But, because appellants were tried jointly and granting a new trial for each appellant with regard only to certain issues would produce an absurd result, we reverse and remand both appellants' cases. *See Charles & Drake, supra,* 414 Md. at 729 n. 3, 997 A.2d 154 (although only Drake challenged the voir dire question on appeal, both Drake's and Charles's cases were reversed and remanded because "disposition of the voir dire issue will result in a new trial, and because . . . granting a new trial for Drake, only, would produce an absurd result," as Drake and Charles were tried jointly).

because "the record does not support [appellants'] assertions that the arguments were ad hominem attacks upon [them] or their counsel, or that the prosecutor's arguments encouraged the jurors to convict them for any reason other than the fact that the evidence convinced the jurors beyond a reasonable doubt that Appellants were guilty of the offenses charged."

We agree with appellants that some of the prosecutor's comments were improper. Although we reverse and remand both appellants' cases due to the court's error in asking the CSI question, we shall address some of appellants' contentions with regard to the State's comments in order to give guidance to counsel.

 "The regulation of argument rests within the sound discretion of the trial court." *Grandison v. State*, 341 Md. 175, 224, 670 A.2d 398 (1995) (citation omitted); *see also James v. State*, 191 Md.App. 233, 258, 991 A.2d 122 (2010). Generally, " '[t]he prosecutor is allowed liberal freedom of speech and may make any comment that is warranted by the evidence or inferences reasonably drawn therefrom.' " *Whaley v. State*, 186 Md.App. 429, 452, 974 A.2d 951 (2009) (quoting *Spain v. State*, 386 Md. 145, 152, 872 A.2d 25 (2005)). Further, counsel " 'may indulge in oratorical conceit or flourish and in illustrations and metaphorical allusions.' " *Id.* (quoting *Spain, supra*, 386 Md. at 153, 872 A.2d 25). Nonetheless, notwithstanding the "great leeway" given to counsel, "not all statements are permissible during closing arguments." *Donaldson v. State*, 416 Md. 467, 488–89, 7 A.3d 84 (2010).

 "For instance, counsel may not 'comment upon facts not in evidence or . . . state what he or she would have proven.' " *Mitchell v. State*, 408 Md. 368, 381, 969 A.2d 989 (2009) (quoting *Smith & Mack v. State*, 388 Md. 468, 488, 880 A.2d 288 (2005)). "It is also improper for counsel to appeal to the prejudices or passions of the jurors, or invite the jurors to abandon the objectivity that their oaths require." *Id.* (citations omitted). Moreover, counsel may not "vouch for or against the witnesses' credibility." *Donaldson, supra*, 416 Md. at 489, 7 A.3d 84 (citing *Spain, supra*, 386 Md. at 153, 872

A.2d 25). *Accord Sivells v. State,* 196 Md.App. 254, 276–77, 9 A.3d 123 (2010).

 Personal attacks upon defendants, unsupported by the evidence, are not permitted. *White v. State,* 125 Md.App. 684, 704–05, 726 A.2d 858 (1999). In *White,* we stated:

> There is a difference between commenting harshly about a defendant and commenting harshly about a defendant's alleged criminal conduct. It is perfectly acceptable to condemn in severe language the details of the cruel crime of which the defendant is accused. But when a prosecutor's argument asks the jury to scorn the defendant because of economic or social class, race, or appearance, those remarks stray from the roadway of permissible comment and cannot escape condemnation just because the law permits some vigorous advocacy. The opportunity during closing argument for attorneys to use eloquence, oratorical skills, illustrations, metaphors, anecdotes, and literary references does not provide a medium for the attorney improperly to arouse prejudice, intentionally or unintentionally.

*Id.* at 705, 726 A.2d 858 (citation omitted).

 Even if we determine that counsel's comments were improper, we will not reverse a conviction " 'unless there has been an abuse of discretion by the trial judge of a character likely to have injured the complaining party.' " *Donaldson, supra,* 416 Md. at 496, 7 A.3d 84 (quoting *Henry v. State,* 324 Md. 204, 231, 596 A.2d 1024 (1991)) (emphasis omitted). "We must determine, upon our 'own independent review of the record,' whether we are 'able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict.' " *Id.* at 496, 7 A.3d 84 (quoting *Lee v. State,* 405 Md. 148, 164, 950 A.2d 125 (2008)). Thus, a prosecutor's improper comments will require reversal, "if it 'appears that the ... remarks actually misled the jury or were likely to have misled or influenced the jury to the defendant's prejudice....' " *Id.* (quoting *Hill v. State,* 355 Md. 206, 224, 734 A.2d 199 (1999)).

At the end of the State's opening statement in this case, the following took place:

[State]: Thank you, very much. Mr. McFadden and Mr. Miles are both represented by very able counsel. You will hear from them now. And as you hear from them, keep in mind who has a reason to lie.

[McFadden's counsel]: Objection, Your Honor.

THE COURT: I'm sorry, I didn't hear the last word. Who what . . . ?

[State]: I said, as you listen—

THE COURT: I heard that. Who?

[State]:—has a reason to lie. To fabricate, to take you away from—

THE COURT: Overruled.

[State]:—the truth, which will come from that witness stand (indicating). (Unintelligible) your collective wisdom.

During closing arguments, the State made the following comment, to which neither appellant objected:

Some of you are way too young to remember, and I am too (laugh) the second world war. But I've read about it. And what they did, the propaganda people in Nazi Germany, is their belief was to tell a lie, tell a big lie and tell it enough times until somebody believes and thinks, huh, maybe. It may be.

Macy Wilson was taken to the hospital and . . . one thing that is considered in the law and probably just in life experiences and common sense as very reliable is a statement made immediately after an event. A startling event, an event that suspends your facility to create a lie. And an example of that is a young woman in a hospital bed shot in her leg in pain . . . depending on whether you believe the original testimony that she said [McFadden] shot me and then later maybe she said, I think he shot me.

The following day, the State began its rebuttal closing argument by commenting:

[State]: Yesterday, you heard some real sharp words about the State and about the detectives' investigation. And what I want you to know is, you know, prosecutors have a different ethical standard than defense attorneys.

[McFadden's counsel]: Objection, Your Honor.

\*　　\*　　\*

[Miles's counsel]: I'm joining the objection.

[McFadden's counsel]: May we approach?

THE COURT: I think you opened the door, Ms. Warner (McFadden's counsel). I'm going to overrule the objection.

[State]: And a prosecutor is ethically prohibited from proceeding with evidence—

THE COURT: Now, wait a minute. Come on up.

(Whereupon, counsel approached the bench and the following ensued:)

THE COURT: What if I see you making the—opening the door?

[State]: Yes.

THE COURT: What exactly do you think they said to open the door? Normally, I would agree with this, but, normally, it would not be admissible as evidence.

\*　　\*　　\*

[State]: The attack on the State. "The shoddy investigation." "They just want a conviction." "Just convict." "Just do it." But I—

THE COURT: But [McFadden's counsel] might want to speak to just that more than one conviction as the evidence shows you.

\*　　\*　　\*

THE COURT: I think you should phrase it that way.

[State]: Okay.

[McFadden's counsel]: Your Honor, can I make a record? At no time during my closing did I challenge the State's ethics.

THE COURT: I think, by implication, you did. But, anyway, your objection to the rebuttal comments are noted.

[McFadden's counsel]: Okay.

[Miles's counsel]: Mine, as well.

THE COURT: Okay. Thank you.

Shortly thereafter, the State continued:

Similarly, the State does not just want a conviction. No prosecutor gets paid more if there's a conviction. I can tell you no homicide detective gets paid more if there's a conviction. They are doing jobs. Jobs that I can tell you are not really that well compensated. And their jobs are to investigate in an objective manner and to present evidence in a Court of law of the guilt of a criminal defendant.

After McFadden's counsel noted an objection, the court overruled, stating:

It's argument. Counsel's argument and any conclusions that she chooses to draw will be up to the jury to decide whether that's the appropriate inference or not. Whether it was done or whether it was right or wrong.

Later, the State commented on both appellants by stating:

[State]: ... And here's another thing I want you to think about on this issue. This Hawkins drama. I believe you can infer reasonably that the Defendants know how to work the system.

[McFadden's counsel]: Objection, Your Honor.

THE COURT: Overruled. You had free rein to argue; she gets free rein to argue.

[State]: This about this. Adrian McFadden didn't even have to be given his Miranda[5] rights. The detectives showed up to serve an arrest warrant. He looked at them and said, "I'm not talking to you. I have a lawyer."

[McFadden's counsel]: Objection, Your Honor. May we approach?

---

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

THE COURT: No. The issue of voluntariness of the statement was for the jury to consider and I assume that's what the argument is relevant to. So I'll overrule the objection.

[State]: So the detectives walked away. But here is where Adrian McFadden ... displayed his attitude towards the police, towards the Courts, towards all of us, towards the fabric of our society that says, above all else, thou shalt not kill. Thou shalt not kill. He couldn't resist. . . .

Lastly, when discussing why Hawkins had not been called as a witness, the State argued:

[State]: ... That Stefan Hawkins, ... he's out playing basketball. He's not down here when this happens. He's not even here. That he suddenly comes rushing across and appears in a dark spot under a tree and randomly fires, randomly fired, into this group of people surrounded by spectators? Does that make any sense to anybody?

And, you know, I told you the other day about our constitution, our system, and American justice and all I mentioned how we have the burden of proof and they don't have to do anything, but they can confront witnesses. Well, they can also compel witnesses.

[Miles's counsel]: Objection, Your Honor. May we approach?

THE COURT: No. Overruled.

[McFadden's counsel]: I join in the objection, Your Honor.

THE COURT: Same ruling. You may continue.

On appeal, appellants claim that the following comments made by the State were improper:

1) During opening statement, the State asked the jurors to "keep in mind who has a reason to lie."

2) During closing argument, the State referred to "the propaganda people in Nazi Germany."

3) During rebuttal closing argument, the State alleged that "prosecutors have a different ethical standard than defense attorneys."

4) During rebuttal closing argument, the State alleged that "[n]o prosecutor gets paid more if there's a conviction."

5) During rebuttal closing argument, the State alleged that appellants "know how to work the system" because McFadden "didn't even have to be given his Miranda rights." According to the State, when the detectives showed up to serve an arrest warrant, McFadden "looked at them and said, 'I'm not talking to you. I have a lawyer.' "

6) During rebuttal closing argument, the State averred that, not only can appellants confront witnesses, "they can also compel witnesses."

At trial, both appellants objected to comment # 6 and, therefore, that issue is preserved for our review. *See* Md. Rule 8–131(a).

 In this case, the prosecutor alleged that not only can appellants confront witnesses, "they can also compel witnesses." This is "beyond the boundaries of fair comment," as the State presented no evidence to support such a statement—especially one that could improperly arouse prejudice. Without any discussion, however, the court overruled the objections raised by both defense counsel. It did not take "steps to mitigate or eliminate the effect of the prosecutor's remarks." *Id.* at 705 (citation omitted). Therefore, the court abused its discretion.

 Next, we turn to comments # 1 and # 5, to which McFadden objected at trial. Like comment # 6, discussed above, the prosecutor's opening statement asking the jurors to "keep in mind who has a reason to lie" (comment # 1), was an attack on defendants' integrity and, therefore, impermissible.

 With regard to comment # 5, McFadden argues that the prosecutor's statement "about Appellant's invocation of his right to remain silent and right to counsel . . . were not directed at any evidence, voluntariness of any statement, or anything else that would make the comments permissible." We agree. Generally, "post-arrest silence [is] inadmissible as

substantive evidence of guilt or to impeach an affirmative defense at trial." *Lupfer v. State,* 194 Md.App. 216, 231, 4 A.3d 32 (citations omitted), *cert. granted,* 417 Md. 384, 10 A.3d 199 (2010). However, "the State may introduce such evidence when it is introduced in fair response to an issue that is generated by the defense regarding the defendant's interaction with the police." *Id.* at 241, 4 A.3d 32. For example, "[w]hen a defendant creates the impression that he or she cooperated with the police, the State may introduce evidence of the defendant's post-*Miranda* silence to rebut that impression." *Id.*

Here, the State did not reference McFadden's silence to rebut an impression that McFadden created regarding his intent to cooperate with the police. Rather, the prosecutor urged the jury to "infer reasonably that the Defendants know how to work the system." By doing so, the State implied that McFadden's invocation of his right to remain silent evidenced guilt on his part. The trial court abused its discretion in finding that the prosecutor made the comment so that the jury could consider the "voluntariness of the statement." Therefore, McFadden's objection should have been sustained.

■■■ Although neither McFadden nor Miles objected to comments # 2 and # 4, we will address appellants' arguments and caution the State that both statements were improper. In *White,* we stated that a final argument containing an appeal to prejudice "can be an overture to jurors to decide a case using preexisting favorable or unfavorable opinions about certain groups of people based on perceived generalities or stereotypes." *White, supra,* 125 Md.App. at 704, 726 A.2d 858 (citing *Contee v. State,* 223 Md. 575, 582–84, 165 A.2d 889 (1960)). "Although it is highly likely that some or all of the jurors may entertain some of the prejudices that exist in their communities, there can be no justification for prosecutors ... to exploit those prejudices." *Id.* (citing *Holbrook v. State,* 6 Md.App. 265, 268–69, 250 A.2d 904 (1969)). The prosecutor's reference to "the propaganda people in Nazi Germany," therefore, was not justified. *See, e.g., Sibiga v. State,* 65 Md.App.

69, 79, 499 A.2d 484 (1985) (holding that the prosecutor's remarks comparing appellant to Al Capone were "highly improper" and prejudicial, as "[t]hey were not fair comment upon the substantive evidence in the case, nor on appellant's credibility as a witness," but "were designed solely to instill in the jury a general antipathy towards appellant") (citations omitted).

 Lastly, the State's argument that "[n]o prosecutor gets paid more if there's a conviction" was not based upon any facts entered into evidence, was not probative of guilt or innocence, and improperly bolstered the prosecutor's argument, the testimony of the lead detective, and the police officers who testified in the case. "Courts consistently have deemed improper comments made during closing argument that invite the jury to draw inferences from information that was not admitted at trial." *Spain, supra,* 386 Md. at 156, 872 A.2d 25 (citations omitted). In this case, the prosecutor's comment—implying that there would be no favorable consequences to the prosecutor's or detective's career if the jury were to return guilty verdicts—constituted facts that were not in evidence and improperly bolstered the credibility of the prosecution. As such, it was improper. *See Sivells, supra,* 196 Md.App. at 279–80, 9 A.3d 123.

 We recognize that not "every remark made by counsel outside of the testimony [are] grounds for reversal." *Reidy v. State,* 8 Md.App. 169, 179, 259 A.2d 66 (1969). " '[W]hat exceeds the limits of permissible comment depends on the facts in each case.' " *Degren v. State,* 352 Md. 400, 430–31, 722 A.2d 887 (1999) (quoting *Wilhelm v. State,* 272 Md. 404, 415, 326 A.2d 707 (1974)). As we previously noted, " 'reversal is only required where it appears that the remarks of the prosecutor actually misled the jury or were likely to have misled or influenced the jury to the prejudice of the accused.' " *Id.* at 431, 722 A.2d 887 (quoting *Jones v. State,* 310 Md. 569, 580, 530 A.2d 743 (1987)).

Here, even if no single error, by itself, deprived appellants of a fair trial, the sustained attack on the defense, cumulative-

ly, exposed the jury to improper considerations. The prosecutor's numerous unjustified comments appealed to the jury's passions, and the court's failure to take any action to overcome the likelihood of prejudice adversely affected both McFadden and Miles.

For all of the foregoing reasons, we reverse appellants' convictions and remand their cases for a new trial

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY ARE REVERSED AND THE CASES ARE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

