20 A.3d 825

**Reginald STRINGFELLOW**

v.

**STATE of Maryland.**

**No. 0139, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

May 27, 2011.

Piedad Gomez (Paul DeWolfe, Public Defender, on the brief), Baltimore, MD, for appellant.

Daniel J. Jawor (Douglas Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: MEREDITH, WOODWARD, PAUL E. ALPERT (Retired, Specially Assigned), JJ.

PAUL E. ALPERT (Retired, Specially Assigned), J.

Reginald Stringfellow, appellant, was convicted by a jury sitting in the Circuit Court for Baltimore City of possessing a regulated firearm after having been convicted of a disqualifying crime, and wearing, carrying, or transporting a handgun. The court subsequently sentenced appellant to five years of imprisonment, without the possibility of parole, and a concurrent three year term, respectively. Appellant asks two questions on appeal:

I. Did the trial court err in asking the venire panel during voir dire: "Does any member of the panel believe that the State is required to utilize specific investigative or scientific techniques such as fingerprint examination in order for the defendant to be found guilty beyond a reasonable doubt?"

II. Was there sufficient evidence to sustain his convictions?

Because we answer both questions in the affirmative, we shall reverse appellant's convictions and remand for a new trial.

## FACTS

Detectives Sherrod Biggers and Augustus Lake, both with the Baltimore City Police Department, testified that around 7:00 p.m. on November 21, 2009, they were in an unmarked police car in the 5300 block of Beaufort Street. Detective Lake was driving; Detective Biggers was in the passenger seat; both were wearing plain clothes. As they approached the dead-end portion of the street, the detectives saw four men, including appellant, standing on the sidewalk to the right

of the car. Both detectives testified that they saw appellant holding a handgun in his hands.

The detectives described what happened next. Detective Biggers testified that appellant's gun was "out like [ ] down towards his side" and that "[o]nce he seen our vehicle, he tried to pass it off to somebody else [who] dropped it and took off running." Detective Lake testified similarly that appellant took the silver handgun from his right hand at "his side and he ... made a handing type motion to the guy that was standing just in the front of him, but that individual either batted it down or he pushed it down to the ground and he started to run." While the one man ran, appellant and the other two men "just stood there[.]"

The detectives stopped their car about four feet from appellant. While arresting appellant, Detective Biggers testified that he did not have any conversation with the other two men but remembered one of the men, who appeared to be in his 40's, telling the detective that appellant was his brother. Detective Lake did not remember having any conversation with the two men, but did remember asking them to step back, which they did. Detective Lake recovered the semiautomatic pistol from the sidewalk; it had seven live rounds in it. Detective Biggers did not request a fingerprint analysis on the gun, explaining that he had recovered 20 handguns and on none of those were suitable fingerprints ever found.

Michael McKay, appellant's friend for over ten years, testified for the defense. McKay testified that he and appellant were "hanging out" and walking around when two men in their mid 20's approached McKay from behind. Appellant and McKay were in their late 30's to early 40's. One of the younger men pulled out a gun, held it to McKay's back, and told him to get on the ground. McKay put his hands up in the air and told him, "I ain't have no money on me." The police arrived about that time and the man immediately dropped the gun and ran. Much to McKay's dismay, the police did not chase after the man but arrested appellant. McKay told the police: "He was with me. Why you all locking him up?"

McKay was impeached with convictions in 1999 and 2004 for distribution of a controlled dangerous substance.

## DISCUSSION

### I.

 Appellant argues that the trial court erred when it asked the voir dire panel, over defense counsel's objection: "Does any member of the panel believe that the State is required to utilize specific investigative or scientific techniques such as fingerprint examination in order for the defendant to be found guilty beyond a reasonable doubt?" According to appellant, the question signaled to the potential jurors that they should convict him and "minimized the State's ultimate burden of proof by informing jurors that they need not expect evidence of scientific quality[.]" Appellant cites *Charles and Drake v. State*, 414 Md. 726, 997 A.2d 154 (2010), in support of his argument. The State argues that the question did not dilute the State's burden of proof but only "attempt[ed] to identify those biased in favor of forensic evidence to the exclusion of all other evidence."[1] The State argues that *Charles and Drake* is inapposite and cites *Corens v. State*, 185 Md. 561, 45 A.2d 340 (1946), in support of its argument. For the reasons explained below, we are persuaded that the question posed is not distinctively different from the question posed in *Charles and Drake*, and so we shall reverse appellant's convictions.

---

1. Preliminarily, the State argues that appellant has not preserved his argument for our review because his counsel accepted the jury ultimately empaneled. Where a party does not object to the composition of the jury selected but to a question posed, which is the case here, the party need not object to the jury ultimately empaneled. *Marquardt v. State*, 164 Md.App. 95, 882 A.2d 900 (2005); *Fowlkes v. State*, 117 Md.App. 573, 579–81, 701 A.2d 862 (1997), *cert. denied*, 348 Md. 523, 704 A.2d 1244 (1998). We have recently held this is true regardless of whether the court declined to give a requested question or gave a question over objection. *McFadden and Miles v. State*, 197 Md.App. 238, 253, 13 A.3d 68 (2011).

■■■■ " 'Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored.' " *White v. State,* 374 Md. 232, 240, 821 A.2d 459 (2003)(quoting *Rosales–Lopez v. United States,* 451 U.S. 182, 188, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981))(italics omitted), *cert. denied,* 540 U.S. 904, 124 S.Ct. 262, 157 L.Ed.2d 189 (2003). "[T]he 'overarching purpose of voir dire in a criminal case is to ensure a fair and impartial jury.' " *Wright v. State,* 411 Md. 503, 508, 983 A.2d 519 (2009)(quoting *Dingle v. State,* 361 Md. 1, 9, 759 A.2d 819 (2000)). "Indeed, the only purpose of voir dire in Maryland is to illuminate to the trial court any cause for juror disqualification." *Id. See White,* 374 Md. at 240, 821 A.2d 459 ("Without adequate voir dire, the trial judge is unable to fulfill his or her responsibility to eliminate those prospective jurors who will be unable to perform their duty impartially.")(Italics omitted).

The manner of voir dire is governed by Md. Rule 4–312. That Rule provides, in pertinent part:

The trial judge may permit the parties to conduct an examination of qualified jurors or may conduct the examination after considering questions proposed by the parties. If the judge conducts the examination, the judge may permit the parties to supplement the examination by further inquiry or may submit to the jurors additional questions proposed by the parties. The jurors' responses to any examination shall be under oath.

Md. Rule 4–312(d)(1).

■■■■ "In the absence of a statute or rule prescribing the questions to be asked of the venire persons during the examination the subject is left largely to the sound discretion of the court in each particular case." *Moore v. State,* 412 Md. 635, 644, 989 A.2d 1150 (2010)(internal quotation marks and citation omitted). "That discretion extends to both the form and the substance of questions posed to the venire." *Wright,* 411 Md. at 508, 983 A.2d 519 (citations omitted). As to the "abuse of discretion" standard, the Court has recently explained that the standard:

is one of those very general, amorphous terms that appellate courts use and apply with great frequency but which they have defined in many different ways. It has been said to occur "where no reasonable person would take the view adopted by the [trial] court," or when the court acts "without reference to any guiding rules or principles." It has also been said to exist when the ruling under consideration "appears to have been made on untenable grounds," when the ruling is "clearly against the logic and effect of facts and inferences before the court," when the ruling is "clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result," when the ruling is "violative of fact and logic," or when it constitutes an "untenable judicial act that defies reason and works an injustice."

There is a certain commonality in all these definitions, to the extent that they express the notion that a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. The decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable.

*North* [*v. North* ], 102 Md.App. [1] at 13–14, 648 A.2d [1025] at 1031–32 [ (1994) ] (alterations in original)(internal citations omitted).

*King v. State*, 407 Md. 682, 697, 967 A.2d 790 (2009).

■ Although it is impermissible to commit prospective jurors to a decision in advance, they may be questioned about their attitudes concerning key issues to be raised at trial, issues such as whether a prospective juror has strong feelings regarding violations of narcotic laws, *State v. Thomas,* 369 Md. 202, 798 A.2d 566 (2002); whether sexual abuse charges stir up strong emotional feelings, *Sweet v. State,* 371 Md. 1, 9–10, 806 A.2d 265 (2002); whether a prospective juror may give more weight to a State's witness's testimony, *Moore v. State,* 412 Md. 635, 989 A.2d 1150 (2010); or whether a prospective

juror may give more weight to a police officer's testimony, *Langley v. State*, 281 Md. 337, 378 A.2d 1338 (1977).

In *Charles and Drake v. State*, 414 Md. 726, 997 A.2d 154 (2010), the Court of Appeals recently addressed the propriety of a voir dire question aimed at addressing the "CSI effect." [2] In that case, the trial court asked the following venire question:

I'm going to assume that many of you, from having done a few of these, watch way too much TV, including the so-called realistic crime shows like CSI and Law and Order. I trust that you understand that these crime shows are fiction and fantasy and are done for dramatic effect and for this dramatic effect they purport to rely upon, "scientific evidence," to convict guilty persons. While this is certainly acceptable as entertainment you must not allow this entertainment experience to interfere with your duties as a juror. Therefore, *if you are currently of the opinion or belief that you cannot convict a defendant without "scientific evidence,"* regardless of the other evidence in the case and regardless of the instructions that I will give you as to the law, please rise.

*Id.* at 730, 997 A.2d 154 (emphasis in original and footnote omitted).

We had affirmed on appeal, reasoning that the question was an appropriate inquiry made to identify venire persons who, without CSI-type evidence, could not convict. *Drake and Charles v. State*, 186 Md.App. 570, 580, 975 A.2d 204 (2009). We emphasized in our reasoning that trial courts have wide discretion as to the " 'scope and form' " of questions propounded during voir dire. *Id.* The Court of Appeals disagreed and reversed.

---

**2.** The "CSI effect" is the impact viewing forensic criminal television dramas have upon juror behavior. *Charles and Drake*, 414 Md. at 731, 997 A.2d 154. CSI is a television series presently airing on CBS. In fairness to the trial judge, at the time of trial on March 8, 2010, our opinion in *Charles and Drake* approved the "scientific evidence" question during voir dire. The Court of Appeals, however, on June 18, 2010, reversed our decision.

To begin with, the Court repeatedly noted that its concern was "with the language of the question, rather than its object" and noted that "whether a voir dire inquiry related to the purported 'CSI effect' is appropriate at a theoretical level, we leave to another day." *Charles and Drake,* 414 Md. at 733, 997 A.2d 154 (footnote omitted). The Court summarized the voir dire question asked as whether the jury could not "convict" the defendants without "scientific evidence." *Id.* at 728, 731, 997 A.2d 154. The Court's focus was on "whether the use of the term 'convict' in the heart of the inquiry, rendered the question untenable[.]" *Id.* at 736, 997 A.2d 154. The Court held that it was.

The Court found support for its holding in *State v. Hutchinson,* 287 Md. 198, 411 A.2d 1035 (1980), a jury instruction case. In *Hutchinson,* the question presented was whether the trial court had committed reversible error when it instructed the jury on how to return a "guilty" verdict but not on how to return a "not guilty" verdict. Specifically, the trial court had instructed the jury:

Now, the verdict sheet which I will be giving you will show two possible verdicts, Count One guilty of rape in the first degree and Count Two guilty of rape in the second degree. . . . If you find the defendant not guilty of rape in the first degree, then you consider rape in the second degree. If you find the defendant guilty of rape in the first degree, then, of course, you need not consider rape in the second degree.

*Hutchinson,* 287 Md. at 201, 411 A.2d 1035 (emphasis omitted, ellipses in original). In reversing and ordering a new trial, the Hutchinson Court "emphasized that the language of the trial court's instruction did not advise the jury that it could return a verdict of 'not guilty'—only 'guilty'[.]" *Charles and Drake,* 414 Md. at 737, 997 A.2d 154. The *Hutchinson* Court reasoned:

While the trial judge instructed the jury that the State had the burden of proving every element of the crime charged, that the defendant was presumed innocent until proven

guilty beyond a reasonable doubt and that no inference of guilt could be drawn from the defendant's failure to testify, nowhere in his instructions did the trial judge tell the jury that it could find the defendant not guilty.

*Id.* (quoting *Hutchinson,* 287 Md. at 205–06, 411 A.2d 1035). The *Charles and Drake* Court noted that the defendant was granted a new trial in *Hutchinson* "because the language of the jury instruction suggested that finding the defendant 'guilty' was a foregone conclusion." *Id.*

Applying the reasoning used in *Hutchinson* to the facts before it, the Court stated: "[l]ike the jury instruction in *Hutchinson,* the voir dire question at issue here suggested that the jury's only option was to convict, regardless of whether scientific evidence was adduced." *Id.*

The Court of Appeals also found persuasive the Mississippi Supreme Court's discussion in *Goff v. State,* 14 So.3d 625 (Miss.2009) where the State prosecutor addressed the venire panel during voir dire, saying:

[Y]ou know, if you watch TV a lot, you probably get to watch—I don't know how many of you—how many of you watch CSI? Well, raise your hand. See, there's a lot of you. A lot of you. It's a very popular show. My kids love it. All right. They're older and they love that show. They like Law and Order.

But, can everybody tell me that they can separate what they see on TV from what you see in the courtroom? I know that sounds like a silly question, but some people go, oh, well, it was on CSI, so how come they don't do it in every case? All right.

And I can tell you how I know, I know CSI and Law and Order are make-believe. If you flip the channel, you may see Scotty beaming somebody else up, and that's on TV. All right?

So, can everybody tell me—and again, this kind of goes to the burden of proof, you know, about what evidence you have—*and can everyone tell me that they will listen to the evidence and not speculate because they don't have, say,*

*DNA or they don't have fingerprints and things you may see or hear about on CSI?* Can everyone tell me they can do that? Yeah?

*Charles and Drake,* 414 Md. at 738, 997 A.2d 154 (quoting *Goff,* 14 So.3d at 652–53)(emphasis in *Charles and Drake* ). The Goff Court, rejecting the defendant's argument that he was prejudiced by the prosecutor's remarks, determined instead that the voir dire question was phrased using neutral language. The Court of Appeals noted that in contrast, "[t]he language of the voir dire question in the present case, however, was not neutral, using the term 'convict,' solely, rather than including its alternative." *Charles and Drake,* 414 Md. at 738, 997 A.2d 154.

The Court of Appeals rejected the State's argument that *Corens v. State,* 185 Md. 561, 45 A.2d 340 (1946), a death penalty case, was applicable. In *Corens,* the Court held that the trial court did not abuse its discretion when it asked the venire: "Have you any such conscientious scruple or opinions as would prevent or preclude you from rendering a verdict of guilty in a case where the penalty prescribed by law may be death upon what is commonly called circumstantial evidence?" *Corens,* 185 Md. at 563, 45 A.2d 340. The *Charles and Drake* Court found *Corens* inapposite, reasoning that the question in *Corens* was "specifically tailored to determine whether the jury could render a death penalty verdict based upon circumstantial evidence" whereas the question asked here "was not inextricably linked to the facts and circumstances of the case, but rather, preordained the result." *Charles and Drake,* 414 Md. at 739, 997 A.2d 154.

The *Charles and Drake* Court concluded that "the judge abused his discretion by suggesting to the panel that 'convict[ing]' Drake and Charles was the only option" because the language used "preordained the result." *Id.* According to the Court, "this suggestive question poisoned the venire, thereby depriving Drake and Charles of a fair and impartial jury." *Id.*

Because the voir dire question in *Charles and Drake* is nearly identical to the question posed in this case, we likewise

conclude that appellant was deprived of a fair and impartial jury. We discern no significant difference between the voir dire question used in our case that asks whether jurors could find the defendant *guilty beyond a reasonable doubt*, and the voir dire question used in *Charles and Drake* that asks whether jurors could *convict* the defendant.

The State argues that by using "beyond a reasonable doubt," precise legal language, instead of "convict," a colloquial word with an instinctively known alternative, the voir dire question posed could not have "preordained the result." We are not persuaded. Both questions express a similar foregone conclusion as to the expected outcome of the trial. Both questions clearly lay out one option, guilt, but fail to lay out any alternative. Moreover, we are aware of no recent opinions by Maryland's appellate courts where we have approved of venire questions that have used such one-sided language. On the contrary, permissible voir dire questions use neutral language, asking the venire if they would "give either more weight or less weight," or whether they "have strong feelings," or whether they have beliefs that might affect their ability "to render a fair and impartial verdict."

█ The State argues that even if the trial court abused its discretion any error was harm less beyond a reasonable doubt. *See generally Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976) (error is harmless when a "reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict"). We note that the question here garnered no response from the venire.[3] Regardless of the venire's outward response to the question, however, we cannot say that the error in no way influenced the verdict. On the contrary, we are of the mind that the error fundamentally affected appellant's right to a fair trial.

---

3. In *Charles and Drake*, the question caused six members of the panel to respond affirmatively but all six were stricken for cause for other reasons. *Charles and Drake*, 414 Md. at 730 n. 5, 997 A.2d 154.

■ Because we believe that the facts and circumstances of this case are governed by *Charles and Drake,* we shall reverse. We note that where we reverse the judgment of the trial court and appellant raises the sufficiency of the evidence on appeal, we must address that issue because retrial is not permitted if the evidence is insufficient to sustain appellant's conviction. *Ware v. State,* 360 Md. 650, 708–09, 759 A.2d 764 (citing *Mackall v. State,* 283 Md. 100, 113, 387 A.2d 762 (1978)), *cert. denied,* 531 U.S. 1115, 121 S.Ct. 864, 148 L.Ed.2d 776 (2001).

## II.

■ Appellant argues that there was insufficient evidence of possession to sustain his two handgun convictions. Assuming, without deciding, that appellant's argument is preserved for our review, we agree with the State that his argument is meritless.

■ The standard for appellate review of evidentiary sufficiency "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "A valid conviction may be based solely on circumstantial evidence." *State v. Smith,* 374 Md. 527, 534, 823 A.2d 664 (2003) (citation omitted). "Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder." *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323 (1998)(citing *Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037 (1991)). A fact-finder is free to believe part of a witness's testimony, disbelieve other parts of a witness's testimony, or to completely discount a witness's testimony. *Longshore v. State,* 399 Md. 486, 499–500, 924 A.2d 1129 (2007) (citations omitted).

Appellant was charged with violating Md.Code Ann., Public Safety Art., § 5–133(b)(1), which provides: "A person may not possess a regulated firearm if the person . . . has been convict-

ed of a disqualifying crime."[4] Appellant was also charged with violating Md.Code Ann., Crim. Law Art. § 4–203(a), which prohibits a person from wearing, carrying, or transporting a handgun. Both crimes require that the person possess a handgun. Possession, in the context of controlled dangerous substances, means to "exercise actual or constructive dominion or control over a thing by one or more persons." Crim. Law Art. § 5–101(u). Appellant argues that the State's evidence was insufficient to show that he possessed the gun because: (1) more than one person besides himself stood near where the gun was found; (2) he did not flee from the police; and (3) the gun was not processed for fingerprints.

What appellant fails to relate is that two witnesses testified that they saw appellant holding the gun. If their testimony was credited by the jury, as it clearly was here, that testimony was sufficient for a rational juror to conclude beyond a reasonable doubt that appellant possessed the gun.

**JUDGMENTS REVERSED AND CASE REMANDED FOR NEW TRIAL.**

**COSTS TO BE PAID ½ BY APPELLANT AND ½ BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

---

**4.** The parties stipulated that appellant was a person prohibited from possessing a firearm.